On Application for Rehearing

PER CURIAM.
The opinion of October 27, 2000, is withdrawn, and the following opinion is substituted therefor.
Kevin Sparks filed this breach-of-contract and fraud action against his former employer, Cash America of Alabama, Inc.; the employer’s parent corporation, Cash America International, Inc.; and his supervisor, Bill Ewing, on March 3, 1997. We affirm conditionally.
Cash America International owns and operates pawnshops worldwide. Cash America of Alabama, an Alabama corporation, operates the pawnshops in Alabama, with a place of business in Mobile County. Sparks, a management employee, had worked at a number of Cash America locations in various states. When the dispute at issue in this action arose, Sparks was working out of the Mobile County location.
Sparks received an annual salary; based on his job performance, he was also eligible to receive incentive bonuses, pursuant to Cash America International’s incentive-bonus plan. A dispute arose concerning bonuses that Sparks claimed Cash America International and Cash America of Alabama (hereinafter sometimes collectively referred to as “Cash America”) owed him. Sparks sued, alleging that during 1994 and *233 1995 he had received inadequate incentive-bonus payments while he was a management employee of Cash America. In addition, he alleged that Cash America had converted certain incentive bonuses and certain items of personalty. Finally, Sparks alleged that Cash America had breached a contract by refusing to comply with the provisions of a 1994 incentive-bonus plan.
Sparks claimed he had relied upon certain representations made by employees of Cash America, including his supervisor, Bill Ewing, to the effect that he would receive an incentive-bonus payment pursuant to the terms of the 1994 bonus plan if he agreed to accept a position as a regional manager. Applying the performance factors of the 1994 bonus plan, Sparks calculated his bonus for the first nine months of 1995 to exceed $32,000. The actual bonus Sparks received for that period was $7,500. Sparks claimed an out-of-pocket loss of $25,000 and claimed unspecified damages for mental anguish.
Cash America claimed that the 1994 bonus plan contained both objective factors and discretionary factors and that the $7,500 bonus award had been based in part on the “discretionary” factors. Cash America also claimed that Sparks was never promoted to the position of regional manager over all of Cash America’s Division Five locations, but served only as an assistant to the vice president of that division, with supervisory authority over only half the stores in that division. Thus, Cash America claimed that the payment of the bonus was discretionary and that Sparks was entitled only to a bonus for the stores that he directly supervised within the region.
On March 18, 1998, Cash America moved for a summary judgment as to all of Sparks’s claims. The trial court granted the motion with regard to Sparks’s count alleging conversion of currency, but denied the motion as to all other claims. A jury trial began on June 2, 1998. Sparks rested his case on June 5, 1998. Cash America moved for a judgment as a matter of law (“JML”), pursuant to Rule 50(a), Ala. R.Civ.P. The court granted the motion as to counts 1, 2, 3, and 10 of Sparks’s amended complaint-these counts contained Sparks’s claims relating to his 1994 relocation and also the conversion claim that had remained after the court had entered the summary judgment. The breach-of-contract and fraud claims relating to Sparks’s 1995 incentive-bonus payment went to the jury. The judge charged the jury on the law of promissory fraud and intentional suppression, specifically as it related to the incentive-bonus plan and the calculation of the bonus payments.
On June 5, 1998, the jury returned a verdict in favor of Sparks and against Cash America, awarding $150,000 in compensatory damages and $1 million in punitive damages. The jury found in favor of Ewing, Sparks’s direct supervisor. On the same day, the court entered a judgment on the jury verdict. On June 19, 1998, Cash America moved for a JML or, in the alternative, a remittitur or a new trial.
The trial court heard Cash America’s postjudgment motion on July 10, 1998. The court, by an order dated August 7, 1998, granted the motion for a remittitur. The order purported to reduce the award to $75,000 in compensatory damages and $225,000 in punitive damages, for a total damages award of $300,000. However, in its order the court did not permit Sparks to accept or to reject the remittitur. Rule 59(f), Ala.R.Civ.P., permits a court to grant a conditional remittitur:
“(f) Remittitur. The court may, on motion for new trial, require a remittitur as a condition to the overruling of the motion for new trial; and, the accep *234 tance of such remittitur by the plaintiff shall not, on appeal by the defendant, prejudice the plaintiffs right to seek reinstatement of the verdict in its full amount.”
Thus, the plaintiff may choose either to accept or to reject the remittitur. If the plaintiff accepts the remittitur, then the jury’s award is reduced accordingly. If the plaintiff rejects the remittitur, then the defendant is granted a new trial. The trial court neglected to give Sparks' the option to accept or to reject the remittitur.
At 11:33 a.m. on August 26,1998, Cash America filed a motion to alter or amend the court’s August 7 order to give Sparks an election. Cash America requested that the August 7, 1998, order be “altered, amended, modified or reissued” to ensure the validity of the order and also requested “such other, further, and different relief as justice may require.” At 3:41 p.m. that same day, Sparks filed a notice of appeal from the August 7 order. On August 27, 1998, Sparks filed a motion requesting the trial court to affirmatively “strike defendants’ motion to alter or amend” and requesting that Cash America’s motion be “held for naught.” The court denied Sparks’s motion. On August 31, 1998, the trial judge “amended” his August 7 order in which he had ordered a remittitur of the awards. The court amended the order so as to give Sparks until September 14,1998, to accept the remittitur; otherwise, the amendment provided, Cash America would get a new trial. Sparks pursued his appeal. This Court stayed the August 31, 1998, order to the extent it required Sparks to elect by September 14 to accept or to reject the remittitur. Cash America cross-appealed.
Sparks asserts that the August 7, 1998, order was legally defective because it did not expressly give Sparks the right to elect whether to accept the remittitur. Moreover, Sparks asserts, because he had appealed from that order before the trial court attempted to amend it, the amendment had no effect. Therefore, Sparks argues, both the order of August 7 and the order of August 31 are void, and the June 5 judgment, in the full amount of the verdict, must stand. We disagree.
The original order ruling on Cash America’s postjudgment motion is not void. However, the order purporting to amend the judgment to allow Sparks the right to reject the remittitur and choose instead a new trial has no effect, because that original order had already been appealed before the trial court entered the order purporting to amend it. See generally Ex parte Dowling, 477 So.2d 400, 404 (Ala.1985).
On its cross-appeal, Cash America asks this Court to reverse the original judgment of the trial court and render a judgment in its favor. Cash America contends that it was entitled to a JML on the counts that went to the jury, specifically, Sparks’s breach-of-contract and fraud claims. Cash America argues that Sparks’s claims relating to the payment of his 1995 incentive bonus should have been dismissed, as a matter of law, because Cash America, it argues, was not contractually obligated to pay Sparks a specific bonus amount. Cash America argues that Sparks presented no evidence to prove any of the elements of promissory fraud or fraudulent suppression and that the award of punitive damages is not supported by clear and convincing evidence. We disagree.
The trial court considered these contentions on several occasions — on pretrial motions for summary judgment; on motions for a JML after the close of the plaintiffs case; and at the close of all the evidence. The trial court concluded that Sparks had presented substantial evidence *235 on these claims, evidence that created a question for the jury to resolve. The record supports the court’s conclusion. The jury had before it evidence from which it could find that Cash America had breached its contract with Sparks and/or had suppressed material facts. See Talent Tree Personnel Servs., Inc. v. Fleenor, 703 So.2d 917 (Ala.1997).
Thus, the judgment in favor of Sparks and against 'Cash America, as remitted in accordance with the trial court’s order of August 7, 1998—the judgment that is the basis of the cross-appeal—is due to be affirmed. However, because Sparks had filed his notice of appeal from the remittitur order before the trial court attempted to “alter or amend” that order to include language allowing Sparks to elect a new trial, Sparks must be allowed the right to accept or to reject the remitti-tur. Consequently, the judgment of the trial court is affirmed on the condition that Sparks file with this Court within 28 days of the date of this opinion an acceptance of a remittitur of the compensatory-damages award from $150,000 to $75,000 and a re-mittitur of the punitive-damages award from $1 million to $225,000; otherwise, the judgment will be reversed and the cause remanded for a new trial. McCormick v. Alabama Power Co., 293 Ala. 481, 306 So.2d 233 (1975); B & M Homes, Inc. v. Hogan, 347 So.2d 1331 (Ala.1977).
APPLICATION OVERRULED; OPINION OF OCTOBER 27, 2000, WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED CONDITIONALLY. 
HOOPER, C.J., and MADDOX, HOUSTON, COOK, SEE, LYONS, BROWN, JOHNSTONE, and ENGLAND, JJ., concur.